UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

EDWARDO GARCIA,                          :

                    Petitioner,      :    15 Civ. 1606 (LTS)(HBP)

     -against-                       :    REPORT AND
                                          RECOMMENDATION
HAROLD GRAHAM, Superintendent,       :

                    Respondent.      :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LAURA T. SWAIN, United States

District Judge,


I.  Introduction


          Petitioner Edwardo Garcia, proceeding pro se, seeks, by

his petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, an Order vacating two judgments of conviction entered on

April 30, 2002 by the Supreme Court of the State of New York, New

York County (Mogulescu, J.) following his pleas of guilty to the

charges of murder in the first degree, attempted murder in the

second degree and burglary in the second degree, in violation of

New York Penal Law Sections 125.27(1)(a)(vii), 110.00/125.25(1)

and 140.25(2), respectively (Petition for Writ of Habeas Corpus,

dated Feb. 12, 2015 (Docket Item ("D.I.") 2) ("Petition")).  By

those judgments, petitioner was sentenced to concurrent terms of imprisonment of twenty-five years to life, twenty-five years and fifteen years, respectively, to be followed by five years of post-release supervision (Declaration in Opposition to Petition for Habeas Corpus, dated May 12, 2015 (D.I. 10) ("Resp. Decl."), ¶ 2).  Petitioner is currently incarcerated pursuant to those judgments.

By letter dated February 12, 2015, petitioner requested that the statute of limitations for his petition be "equitably toll[ed] . . . in the interest of justice" (Letter from Petitioner to the Pro Se Office, dated Feb. 12, 2015 (D.I. 3), at 1). I issued an Order on March 18, 2015 directing respondent to "file and serve . . . an answer to the petition solely addressing the matter of the timeliness of the petition" (Order, dated Mar. 18, 2015 (D.I. 7) (emphasis in original)).  On May 12, 2015, respondent filed an answer and sought dismissal of the petition as untimely pursuant to 28 U.S.C. § 2244 (Resp. Decl.).

Thereafter, petitioner requested an extension of his time to respond to respondent's answer, which I granted, setting a deadline of August 17, 2015 (Memo Endorsement, dated June 24, 2015 (D.I. 14)).  On August 13, 2015, I received an undated letter from petitioner, which will be docketed simultaneously with the filing of this Report & Recommendation, requesting an

2

additional 45 days to respond (Letter from Petitioner to the Undersigned).  More than six months have passed since petitioner submitted this letter, and petitioner has not responded to respondent's answer during that time.  I therefore deem petitioner's request for a 45-day extension from the August 17, 2015 deadline moot and issue this Report & Recommendation on the basis of the parties' previous submissions.

For the reasons set forth below, I respectfully recommend that the petition be dismissed as untimely.

## II.  Facts

The relevant facts can be briefly stated.  Following the fatal shooting of Hansel Henriquez during the course of an attempted robbery on October 8, 1999, petitioner was charged with murder in the first degree, murder in the second degree and multiple related offenses in Bronx County Indictment Number 6037/99.  Petitioner was also charged with attempted murder in the second degree, attempted robbery in the first degree, burglary in the second degree and multiple related offenses in Bronx County Indictment Number 6120/99 in connection with the shooting of Mamadou Sangare during the course of an attempted robbery of a livery cab on September 29, 1999 and petitioner's alleged entry

into the dwelling of Carmen Andluz with the intent to commit a crime therein on July 21, 1999 (Resp. Decl., Ex. 1, at 2-3).

On March 25, 2002, petitioner pleaded guilty to first-degree murder, second-degree attempted murder and second-degree burglary in satisfaction of both indictments (Resp. Decl., Ex. 1, at 4-6).  During his allocution, petitioner affirmatively acknowledged that he "tried to rob a chain at gunpoint from . . . Henriquez . . . and during the attempt to take that chain from [Henriquez] . . . [he] shot and killed him" (Resp. Decl., Ex. 1, at 5-6).  At the time of his pleas, petitioner's counsel stated that the pleas were conditioned on the Court's promise of an aggregate sentence of 25 years to life (Resp. Decl., Ex. 1, at 4).

Petitioner's sentencing hearing was held on April 20, 2002.  During the sentencing hearing, petitioner stated that he "had no intentions of robbing [Henriquez]," that the gun he fired "accidentally went off" and that he was "hallucinating on all the drugs" at the time of the shooting (Resp. Decl., Ex. 1, at 6-7).  Following his statement, petitioner was sentenced to concurrent terms of twenty-five years to life, twenty-five years and fifteen years (Resp. Decl., Ex. 1, at 7; Petition, at 1[1]).  At no point

---

[1]Because the petition lacks consistent internal pagination,
(continued...)

during his sentencing hearing did petitioner attempt to withdraw his guilty plea, and petitioner did not file a motion to vacate the guilty plea following the Trial Court's judgment (Resp. Decl., Ex. 1, at 7).

In June of 2003, petitioner appealed his conviction to the Appellate Division of the Supreme Court, First Department (Resp. Decl., ¶ 3).  In his appeal, petitioner argued that (1) his "plea of guilty to first-degree murder was not voluntary and must be vacated because the court failed to conduct further inquiry after [petitioner] at a sentencing hearing cast signifi-cant doubt upon his guilt by stating that he accidentally dis-charged his gun while intoxicated" and (2) his "guilty pleas [for attempted murder in the second degree and second-degree burglary] must be vacated since they were induced by the promise of sen-tences concurrent to that imposed under his [murder] conviction" (Resp. Decl., Ex. 1, at 8, 15).

On December 16, 2003, the Appellate Division affirmed the judgment of conviction.  People v. Garcia, 2 A.D.3d 264, 768 N.Y.S.2d 328 (1st Dep't 2003).  The New York Court of Appeals denied petitioner leave to appeal on April 20, 2004.  People v. Garcia, 2 N.Y.3d 762, 811 N.E.2d 42, 778 N.Y.S.2d 780 (2004).

---

[1](...continued)
I use the page numbers assigned by the court's ECF system.

Petitioner did not seek review by the United States Supreme Court (Resp. Decl., ¶ 5).

On August 26, 2009 -- more than five years later -- petitioner filed a motion to vacate his convictions pursuant to New York Criminal Procedure Law Section 440.10, alleging that (1) his pleas were invalid because the Trial Court failed to conduct an inquiry after he made statements during the sentencing hearing suggesting lack of or impaired capacity, (2) his pleas were invalid because they were coerced and taken in violation of his Fifth Amendment privilege against self incrimination and (3) he was deprived of "his fundamental right to impartial justice" (Resp. Decl., ¶ 6 & Ex. 3).  The Trial Court denied petitioner's motion on March 5, 2010 (Resp. Decl., ¶ 7).  It does not appear from the record before me that petitioner appealed this decision.[2]

On June 3, 2013, petitioner filed a second motion to vacate his convictions pursuant to New York Criminal Procedure Law Section 440.10, this time claiming that his counsel was

---

[2]At one point, the petition indicates that an appeal was taken from the Trial Court's March 5, 2010 decision (Petition, at 5); however, at another point, the petition appears to indicate that petitioner only appealed from the decision on a subsequent motion to vacate.  Additionally, neither petitioner nor respondent have provided a citation for, or copy of, any motion or decision concerning any appeal taken from the March 5, 2010 decision.

ineffective at the time of his guilty pleas and sentencing because his attorney never advised him that voluntary intoxication is a defense to first-degree murder (Resp. Decl., ¶ 8). On November 15, 2013, the Trial Court denied this motion, and the Appellate Division denied leave to appeal on March 26, 2014 (Resp. Decl., ¶ 9).

Petitioner filed this federal habeas corpus petition on February 12, 2015[3] and claimed that his counsel was ineffective because he never advised petitioner of, or pursued, an intoxication defense and never informed petitioner that "he was not guilty of the crime, since he could not formulate intent" (Petition, at 5, 8). The petition also appears to claim that petitioner's guilty plea was involuntary due to his counsel's ineffective assistance.[4]

_____

[3]The petition indicates that it was signed by petitioner on February 12, 2015 and that it was received by the Court's <u>Pro Se</u> Office on March 3, 2015. Because a pleading from an incarcerated inmate is deemed filed as soon as it is given to prison authorities for mailing, <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988); <u>Noble v. Kelly</u>, 246 F.3d 93, 97-98 (2d Cir. 2001), I deem the petition to have been filed on the date petitioner purportedly signed it, which is necessarily the earliest date on which it could have been given to prison authorities for mailing.

[4]Although the petition does not expressly claim that petitioner's plea was involuntary, the petition states that petitioner "didn't fully comprehend the significance of the rights [he] was giving up" when he pleaded guilty (Petition, at 9). In light of petitioner's <u>pro se</u> status, I shall liberally construe this allegation to claim an involuntary plea. <u>Craig v.</u>
(continued...)

III.  <u>Analysis</u>

    A.  <u>The AEDPA's Statute of Limitations</u>

        28 U.S.C. § 2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, provides a one-year statute of limitations for habeas corpus petitions.[5]

---

[4](...continued)
<u>United States</u>, 02 Civ. 2063 (HB), 2003 WL 21785150 at *2 n.2 (S.D.N.Y. July 31, 2003) (Baer, D.J.) ("[I]t is unclear whether petitioner has actually made a claim of an involuntary plea. Because he is pro se, the court considers it nonetheless."), <u>adhered</u> <u>to</u> <u>on</u> <u>reconsideration</u> <u>sub</u> <u>nom.</u>, <u>Brown v. United States</u>, 2003 WL 22004834 (S.D.N.Y. Aug. 22, 2003) (Baer, D.J.); <u>see</u> <u>also</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a <u>pro</u> <u>se</u> litigant must be construed liberally and interpreted to raise the strongest arguments that they <u>suggest</u>." (emphasis in original; citations and internal quotation marks omitted)).

[5]Section 2244(d)(1) provides:

    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

                         (continued...)

The AEDPA's limitations period ordinarily commences running when a conviction becomes final.  28 U.S.C. § 2244(d)(1)(A).  A conviction becomes final upon the completion of direct appellate review in state court and by the United States Supreme Court -- either when certiorari proceedings are completed or when the time for seeking direct review by the United States Supreme Court expires, i.e., ninety (90) days after the last decision by the highest state court on direct appeal.  Clay v. United States, 537 U.S. 522, 532 (2003); Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001); Rhodes v. Senkowski, 82 F. Supp. 2d 160, 165 n.2 (S.D.N.Y. 2000) (Buchwald, D.J.).

The AEDPA also provides that the one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  The effect of this toll is to "exclude[] [the] time during which properly filed state relief

_____

[5](...continued)
        (C) the date on which the constitutional right
        asserted was initially recognized by the Supreme Court,
        if the right has been newly recognized by the Supreme
        Court and made retroactively applicable to cases on
        collateral review; or

        (D) the date on which the factual predicate of the
        claim or claims presented could have been discovered
        through the exercise of due diligence.

applications are pending[; it] does not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).

Here, the New York Court of Appeals denied petitioner's application for leave to appeal his judgment of conviction on April 20, 2004, and petitioner did not seek review by the United States Supreme Court (Resp. Decl., ¶ 4). Accordingly, his conviction became final on July 19, 2004, which is the 90th day after the New York Court of Appeals denied petitioner leave to appeal. McKinney v. Aruz, 326 F.3d 87, 96 (2d Cir. 2003); Pratt v. Greiner, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002). Thus, the one-year limitations period for filing a petition for habeas corpus began to run on July 19, 2004, and petitioner had until July 19, 2005 to file his petition. Petitioner filed his petition on February 12, 2015 -- nearly ten years after the expiration of the one-year limitations period. Therefore, unless subsection 2244(d)(1)(B), (C) or (D) or subsection 2244(d)(2) applies, the petition is time-barred.

Petitioner does not claim that any of the provisions of subsection 2244(d)(1)(B), (C) or (D) are applicable here and none appear to be applicable.[6]

---

[6]For instance, there is no indication in the record that
(continued...)

In addition, petitioner's August 26, 2009 and June 3, 2013 state court motions to vacate the judgments do not save the petition.  Even though a properly filed state court collateral attack will toll the one-year limitations period under 28 U.S.C. § 2244(d)(2), it does not "reset" the one-year clock.  Smith v. McGinnis, supra, 208 F.3d at 17.  Because the one-year limitations period ended on July 19, 2005 -- over four years before petitioner filed his first collateral attack in state court, petitioner's state court motions have no effect on the limitations period.

Accordingly, I conclude that the petition is untimely under the AEDPA's statute of limitations.

---

[6](...continued)
petitioner "was prevented from filing by [any] State action."  28 U.S.C. § 2244(d)(1)(B).  Similarly, subsection 2244(d)(1)(C) does not apply because petitioner's claims of ineffective assistance of counsel and an involuntary plea have been recognized by the Supreme Court since long before petitioner's conviction.  See Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (noting that "the contours of the right to effective assistance of counsel" have been clearly established since the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984)); Mosher v. LaVallee, 351 F. Supp. 1101, 1107 (S.D.N.Y. 1972) ("[I]t is well settled that a . . . conviction based on an involuntary plea of guilty is inconsistent with due process and must be set aside on collateral attack by federal habeas corpus." (citations omitted)), aff'd, 491 F.2d 1346 (2d Cir. 1974).  Finally, subsection 2244(d)(1)(D) does not apply because the factual predicates for petitioner's claims arose at or before petitioner's sentencing hearing on April 20, 2002, more than a decade before the filing of his petition on February 12, 2015.  Rivas v. Fischer, 687 F.3d 514, 537 (2d Cir. 2012).

B.  Equitable Tolling

     In addition to the tolling provisions set forth in
Section 2244(d), the one-year limitations period is also subject
to the doctrine of equitable tolling.  Valverde v. Stinson, 224
F.3d 129, 133 (2d Cir. 2000); Smith v. McGinnis, supra, 208 F.3d
at 17.  As explained by the Court of Appeals for the Second
Circuit:

> "Equitable tolling allows courts to extend the
> statute of limitations beyond the time of expiration as
> necessary to avoid inequitable circumstances."  Johnson
> v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996).  In Smith
> v. McGinnis, we said that in habeas cases, "[e]quitable
> tolling applies only in . . . 'rare and exceptional
> circumstance[s],'" 208 F.3d at 17 (first alteration in
> original, second alteration added) (quoting Turner v.
> Johnson, 177 F.3d 390, 391-92 (5th Cir.) (per curiam),
> cert. denied, 527 U.S. 1007, 120 S. Ct. 504, 145
> L.Ed.2d 389 (1999)), and that a habeas petitioner
> seeking equitable tolling "must show that extraordinary
> circumstances prevented him from filing his petition on
> time," id. (citing Johnson v. Nyack Hosp., 86 F.3d at
> 12).
>
>              *       *       *
>
>      But assuming that . . . extraordinary circum-
> stances occurred, preventing the petitioner from filing
> his petition for some length of time, [a court] must
> still determine whether they "prevented him from filing
> his petition on time."  Smith v. McGinnis, 208 F.3d at
> 17 (emphasis added).  The word "prevent" requires the
> petitioner to demonstrate a causal relationship between
> the extraordinary circumstances on which the claim for
> equitable tolling rests and the lateness of his filing,
> a demonstration that cannot be made if the petitioner,
> acting with reasonable diligence, could have filed on

time notwithstanding the extraordinary circumstances .
. . . If the person seeking equitable tolling has not
exercised reasonable diligence in attempting to file
after the extraordinary circumstances began, the link
of causation between the extraordinary circumstances
and the failure to file is broken, and the extraordi-
nary circumstances therefore did not prevent timely
filing.

Valverde v. Stinson, supra, 224 F.3d at 133-34; accord De Jesus

v. Miller, 215 F. Supp. 2d 410, 412 (S.D.N.Y. 2002) (Marrero,

D.J.).

     Petitioner argues that he is entitled to equitable

tolling because (1) he was housed in protective custody from

2012-2015, with limited access to the prison law library, and (2)

he is proceeding pro se (Letter from Petitioner to the Pro Se

Office, dated Feb. 12, 2015 (D.I. 3)).  Neither of these circum-

stances justify equitable tolling.

     Petitioner's claim concerning his being housed in

protective custody is unavailing because petitioner claims that

he was placed in protective custody in 2012, which is seven years

after the statute of limitations ran under the AEDPA.  Therefore,

there is no "causal relationship" between petitioner's being

housed in protective custody and his failure to file his petition

by July 19, 2005.  Valverde v. Stinson, supra, 224 F.3d at 134;

accord Hizbullahankhamon v. Walker, 255 F.3d 65, 76 (2d Cir.

2001) ("[E]ven assuming that the alleged deprivation of access to his legal materials and the law library constituted an extraordinary circumstance' warranting equitable tolling, petitioner cannot show that this extraordinary circumstance prevented him from filing a timely habeas petition." (emphasis in original)).

Similarly, petitioner's pro se status does not constitute an extraordinary circumstance warranting equitable tolling. Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004) ("[P]ro se status does not in itself constitute an extraordinary circumstance meriting tolling."); Smith v. McGinnis, supra, 208 F.3d at 18 ("[Petitioner's] pro se status until March 1997 does not merit equitable tolling.").[7]

In sum, because of petitioner's unexplained and unjustified delay in filing the present petition, "the link of causation between [any] extraordinary circumstances and the failure to

---

[7]Petitioner's claims of ineffective assistance of counsel and an involuntary plea also do not give rise to an equitable toll because there is no causal relationship between the conduct underlying those claims and the failure to file the petition in a timely manner. Gordon v. Cunningham, 05 Civ. 2540 (WHP)(HBP), 2008 WL 5099950 at *4 (Pauley, D.J.) (adopting Report & Recommendation of Pitman, M.J.); M.P. v. Perlman, 269 F. Supp. 2d 36, 39 (E.D.N.Y. 2003) ("Equitable tolling is unwarranted . . . since counsel's alleged ineffectiveness did not interfere with petitioner's timely filing of a habeas application within the one-year period following the finality of his conviction.").

14

file is broken, and . . . extraordinary circumstances therefore did not prevent timely filing." Valverde v. Stinson, supra, 224 F.3d at 134.  Accordingly, I conclude that petitioner is not entitled to equitable tolling.

    C.  Actual Innocence

        In McQuiggan v. Perkins, --- U.S. ---, 133 S. Ct. 1924, 1928 (2013), the Supreme Court recognized that a claim of "actual innocence, if proved, serves as a gateway through which a [habeas] petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the [AEDPA's] statute of limitations."  See also Rivas v. Fischer, supra, 687 F.3d at 547 n.42 (characterizing actual innocence as an "equitable exception" to the AEDPA's statute of limitations and distinguishing it from a request for equitable tolling).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Lyons v. LaClaire, 571 F. App'x 34, 35 (2d Cir. 2014) (summary order) (alteration in original), quoting Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).  Accordingly, the Supreme Court has cautioned that a credible "actual innocence" claim is "rare" and that a petitioner arguing "actual innocence" must meet the standard set forth in Schlup v. Delo, 513 U.S. 298 (1995), by presenting new evidence that is so compelling that "it is more likely than not

15

that no reasonable juror would have convicted" had the evidence
been offered at trial.  <u>McQuiggan v. Perkins</u>, <u>supra</u>, 133 S. Ct.
at 1928, 1933, <u>quoting</u> <u>Schlup v. Delo</u>, <u>supra</u>, 515 U.S. at 329.

> A viable claim of actual innocence must be both
> credible and compelling . . . .  To satisfy the "credi-
> ble" prong, a claim "must be supported by 'new reliable
> evidence -- whether it is exculpatory scientific evi-
> dence, trustworthy eyewitness accounts, or critical
> physical evidence -- that was not presented at trial.'"
> <u>Rivas</u>, 687 F.3d at 541 (quoting <u>Schlup</u>, 513 U.S. at
> 324).  The "compelling" element requires that the
> petitioner demonstrate "that 'more likely tha[n] not,
> in light of the new evidence, no reasonable juror would
> find him guilty beyond a reasonable doubt.'"  <u>Id</u>.
> (quoting <u>House v. Bell</u>, 547 U.S. 518, 538, 126 S. Ct.
> 2064, 165 L.Ed.2d 1 (2006)).

<u>Barrientos v. Lee</u>, 14 Civ. 3207 (LTS)(JCF), 2015 WL 3767238 at
*11 (S.D.N.Y. June 17, 2015) (Swain, D.J.) (adopting Report &
Recommendation of Francis, M.J.), <u>appeal</u> <u>docketed</u>, No. 15-2182
(2d Cir. July 8, 2015).  A district court may also consider
"[u]nexplained delay in presenting new evidence" because "untime-
liness . . . does bear on the credibility of evidence proffered
to show actual innocence."  <u>McQuiggan v. Perkins</u>, <u>supra</u>, 133 S.
Ct. at 1935-36.

While it is clear that an "actual innocence" claim must
be supported by "new reliable evidence" to be credible, "circuit
courts are split on whether 'new' includes only 'newly discov-
ered' evidence -- evidence that was not <u>available</u> at the time of
trial -- or more broadly encompasses 'newly presented' evidence -

16

- all evidence that was not presented to the jury during trial."
Lopez v. Miller, 915 F. Supp. 2d 373, 400 n.16 (E.D.N.Y. 2013)
(emphases in original).  In Rivas, the Court of Appeals for the
Second Circuit "did not discuss the issue in detail, but
appear[ed] to have taken the 'newly presented' side of the
circuit split."  Lopez v. Miller, supra, 915 F. Supp. 2d at 400
(E.D.N.Y. 2013), citing Rivas v. Fischer, supra, 687 F.3d at 543.
A broad construction of "newly presented" evidence is also
supported by the Court of Appeals' statement in Lucidore v. N.Y.
State Div. of Parole that "[w]here the defendant pleaded guilty
(as in the instant case), and therefore did not have the evidence
in his case evaluated by a jury, . . . the petitioner still must
show that, 'in light of all the evidence, it is more likely than
not that no reasonable juror would have convicted him.'"  209
F.3d 107, 114 (2d Cir. 2000) (emphasis added), quoting Bousley v.
United States, 523 U.S. 614, 623 (1998).  Accordingly, I shall
analyze petitioner's "actual innocence" claim in light of all the
evidence presented in the petition.

Here, petitioner's evidence of actual innocence con-
sists of (1) the statements he made during his sentencing hearing
that he was intoxicated at the time of the shooting and that his
gun fired "accidentally" (Petition, at 5-9), (2) allegations that
petitioner had a history of hearing voices (Petition, at 5) and

17

(3) a psychiatrist's report, prepared on or around January 8, 2001, which concluded that petitioner's drug use likely "interfered with his ability to modulate his aggressive and impulsive behavior" at the time of the shooting (Resp. Decl., Ex. 5, at 14[8]).

Even if I make the very generous assumption that this evidence constitutes "new evidence" under McQuiggan and Schlup, see Lucidore v. N.Y. State Div. of Parole, supra, 209 F.3d at 114, it is not sufficiently credible or reliable to trigger application of the "actual innocence" equitable exception.

The first two arguments offered by petitioner in support of his claim of actual innocence -- (1) he was intoxicated at the time of the shooting and his gun discharged accidentally and (2) he had a history of hearing voices -- are based on nothing more than petitioner's uncorroborated, self-serving statements and come from a source that has a strong interest in the outcome of the proceedings.  As evidence, they lack the probative force necessary to support the conclusion that had this evidence presented, "no reasonable juror would [have found petitioner] guilty beyond a reasonable doubt."  Rivas v. Fischer,

---

[8]Because Exhibit 5 to Resp. Decl. lacks consistent internal pagination, I use the page numbers assigned by the Court's ECF system.

supra, 687 F.3d at 541.  In addition, with respect to the latter claim, petitioner does not argue that the alleged voices told him to commit the murder or rendered him incapable of appreciating the nature of his conduct or knowing that it was wrong.  See N.Y. Penal L. § 40.15 (defining lack of capacity defense).  Finally, petitioner's nearly ten-year delay in filing his habeas petition weighs against the credibility of this "new evidence."  McQuiggan v. Perkins, supra, 133 S. Ct. at 1936 ("[U]ntimeliness . . . does bear on the credibility of evidence proffered to show actual innocence.").

Petitioner's final contention in support of his actual innocence claim -- that petitioner's drug use likely interfered with his ability to control his aggressive and impulsive behavior -- is also insufficient.  This contention is based on a psychiatric report prepared in January 2001, and it does not establish or conclude that petitioner lacked the ability to form the intent to rob or shoot Henriquez at the time of Henriquez's shooting.  Although this report admittedly tends to exculpate petitioner, the actual innocence standard is far more demanding.  The report is an after-the-fact opinion, based in substantial part on petitioner's statements to the psychiatrist who issued the report.  Moreover, the report concludes that there was only a likelihood -- not a certainty -- that petitioner's ability to

control his conduct was impaired.  Like petitioner's own state-
ments, this evidence is not so compelling that, had it been
presented to a jury, a verdict of guilty would have been unrea-
sonable.

Accordingly, I conclude that petitioner has not made a
showing of "actual innocence" sufficient to overcome the AEDPA's
statute of limitations.

IV.  Conclusion

For all the foregoing reasons, I respectfully recommend
that the petition be dismissed as untimely.

I further recommend that a certificate of appealability
not be issued.

> When the district court denies a habeas petition
> on procedural grounds without reaching the prisoner's
> underlying constitutional claim, a [certificate of
> appealability] should issue when the prisoner shows, at
> least, that jurists of reason would find it debatable
> whether the petition states a valid claim of the denial
> of a constitutional right and that jurists of reason
> would find it debatable whether the district court was
> correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Eltayib v.
United States, 294 F.3d 397, 400 (2d Cir. 2002); Bethea v.
Girdich, 293 F.3d 577, 577-78 (2d Cir. 2002) (per curiam).  I
conclude that reasonable jurists would not find debatable the
conclusion that the petition is untimely and thus barred.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura T. Swain, United States District Judge, Room 1320, 500 Pearl Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Swain.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237 & n.2 (2d Cir.

1983) (<u>per</u> <u>curiam</u>).

Dated:     New York, New York
           March 15, 2016

                                  Respectfully submitted,


                                  HENRY PITMAN
                                  United States Magistrate Judge

Copies Mailed to:

Mr. Edwardo Garcia
02-A-4087
Eastern Correctional Facility
Box 338
Napanoch, New York   12458

Nancy D. Killian, Esq.
Katherine Gregory, Esq.
Bronx District Attorney's Office
198 East 161st Street
Bronx, New York   10451